FOTEAUX *v.* LEPAGE, *et al.*

F. was the administrator of the estate of L., deceased, and also the guardian of his minor children, six in number. Upon a settlement of his accounts before the county court, there was found to be due F., from the said estate, the sum of $26,40, for which a judgment was rendered in his favor by the county court, and there was found to be in his

Foteaux v. Lepage et al.

hands, of the estate of his wards, and due to them, a certain sum to each. From the decision of the county court, upon the accounts of F., as administrator and guardian, the heirs appealed to the district court, in which the accounts were referred to a commissioner, to restate the same, and report to said court. The commissioner reported that there was due to F., as administrator, from the estate, $10,68, and that a certain sum was due to each heir, on the 20th of September, 1855, from said F., making a total of $1766,51. Both parties excepted to the report of the commissioner, but they were overruled. The district court confirmed the report, ordered interest to be allowed on the amount reported to be due to the heirs from F., from the date of the filing of the report, to the time of its acceptance by the court; and, adding the several amounts together, including the sum due one of the heirs, who had deceased, rendered judgment against F., in favor of "The Heirs of L.," for $2,079,15: *Held,* 1. That the accounts of F., as administrator, and as guardian, could not be treated as a whole, and that they could not be taken to the district court, nor brought to the supreme court, by one and the same proceeding, in the nature of an appeal; 2. That no judgment could be properly rendered in favor of the heirs, by the name of "The Heirs of L.;" 3. That in such a proceeding, neither the county court, nor the district court, was authorized to render a judgment against F., either as guardian, or as administrator.

Where the same person is administrator of an estate, and also guardian of the minor heirs of the intestate, his account as administrator is distinct from his account as guardian; and his account as guardian of each one of the heirs, is distinct from that of all the others. The county court is required to consider each account separately, and to render a distinct adjudication upon each; and it is from such decision that an appeal must be taken, and not one appeal from the whole.

Each one of the heirs is entitled to have his portion of his ancestor's estate kept to itself, and to require his guardian to render a distinct account in relation to it. If a judgment is to be rendered against the guardian, it should be for such sum, to be ascertained by the court, as each heir may be entitled to, and not a judgment for the whole amount in his hands, due to all the heirs.

A proceeding before the county court, to require an administrator, or guardian, to make a settlement of his account, and to ascertain the situation of the estate of which he is administrator or guardian, is in no sense a proceeding to recover a judgment against the administrator or guardian, for the money received by him, or remaining in his hands.

In such case, neither the county court, nor the district court, is authorized to render any judgment against the party. All that it is empowered to do, is to ascertain the state of the accounts, as such administrator or guardian, in order that, when so ascertained, the parties interested may take such further steps as they may deem expedient.

Foteaux v. Lepage et al.

An administrator has no right to receive the rents and profits of the real estate of his intestate, accruing after his decease.

The account of an administrator or guardian should be rendered under oath.

Where a ward is of an age to earn his own livelihood, and the income of his estate is not sufficient for his nurture and education, the ward must either be bound out as an apprentice to learn a trade, or application must be made to the court of probate, for permission to encroach upon the principal of the estate.

As a general rule, the expenses of the ward must be kept within the income of his estate.

The rents and profits of the real estate, and next the interest of the ward's money, are to be first resorted to, for his nurture and education; and the guardian will not be permitted, without an order of the probate court, to that effect, to encroach upon the principal sum of the ward's estate.

Where, in the settlement of a guardian's account, it appeared that at the time of the appointment, one of the wards was sixteen, and the other fourteen, years of age; that one of them was in the employ of his guardian, rendering him service, and was capable of earning his food and clothing; that each was charged with their board at the rate of sixty dollars per annum, for two years after the time of the appointment of the guardian; that they were not allowed anything for their labor or services to the guardian; that the guardian had not only expended upon the wards, the rents and profits of the real estate, and the interest of their money, but had also expended largely of the principal; that the amount reported by the guardian, as having been expended in the education of the wards, from 1842 to 1853, was $21.24; and that during a period of ten years, no settlement of the guardian's accounts had been made; and where it was not shown that the guardian was authorized, by any order of the probate court, to encroach upon the principal of the estate, and thereupon the charge against the heirs for board, was rejected: *Held*, That the claim was properly rejected.

Where a commissioner appointed to state an account of a guardian, made yearly rests, and compounded the interest annually: *Held*, That the account was properly stated.

Where it is shown that a guardian has made more than the legal rate of interest, out of the money or property of the ward, he will be charged with all that he has made out of the estate. Where nothing is shown, he will be charged with the highest rate fixed by law.

Where a guardian has been careless and negligent in the discharge of his duty, and in the custody of the estate of the ward, a court will be justified in withholding any compensation.

The amount of indebtedness from the guardian to the ward, should, in no case, be allowed to fall below the principal sum coming to his

hands; and no credit claimed, or payments made, by him, should be allowed him in his account, which encroach upon the principal of the ward's estate, unless such encroachment is shown to have been first directed by the court of probate.

The guardian must produce vouchers for all expenditures made by him; and where this cannot be done, proof of the payment or expenditure, must be given by his own oath, or by other sufficient testimony.

*Appeal from the Dubuque District Court.*

THURSDAY, JUNE 10.

Upon a settlement of the accounts of Foteaux, as administrator of Clement Lepage, deceased, there was found due him, from the estate, the sum of $26,40, for which judgment was rendered in his favor by the county court. As guardian of the minor heirs of Lepage, there was found to be in his hands, of the estate of his wards, and due to them, respectively, the following sums—that is to say: To Clement Lepage, $387,14; to Louis Lepage, $363,02; to Felicite Lepage, $424,90; to Joseph Lepage, $118,06; to William Lepage, $104,78; to Mary Lepage, $52,74. Clement Lepage, one of the heirs, had departed this life, in 1849 or 1850, at the age of twenty-three years, intestate, and unmarried. The county court ordered that the sum of $387,14, the amount of his estate in the hands of his said guardian, be paid into court, to the clerk thereof, to be retained by him, until claimed by his proper representatives or heirs. From the decision of the county court, upon the accounts of Foteaux, as administrator and guardian, the heirs of Lepage appealed to the district court; by which court the accounts were referred to a commissioner, to restate the same, and report to said district court. The commissioner found, and reported, that there was due to Foteaux, as administrator, from the estate, $10,68; and that the amounts due to the several heirs, on the 20th of September, 1855, from their guardian, were as follows: To Clement Lepage, $534,22; to Louis Lepage, $371,75; to Felicite Lepage, $371,75; to Joseph

Lepage, $242,63; to William Lepage, $147,23; to Mary Lepage, $98,93—making a total of $1766,51. Both parties filed exceptions to the report of the commissioner. The heirs excepted for the reason, that Foteaux was charged by the commissioner, with interest on the money in his hands, at the rate of six *per centum per annum* only. Foteaux excepted to the report, because: 1. He was charged certain sums as administrator and guardian, without authority of law; 2. Certain credits claimed by him, were not allowed; 3. The interest was compounded at the end of each year.

The district court confirmed the report of the commissioner; ordered interest to be allowed on the amount ascertained by him to be due to the heirs of Lepage from Foteaux, from the date of the filing of the report to the time of its acceptance by the court; and adding the several amounts together, rendered judgment against Foteaux, in favor of "The Heirs of C. Lepage," for *two thousand and seventy-nine dollars and fifteen cents*. This judgment includes the amount found to be in the hands of Foteaux, of the estate of Clement Lepage, one of the heirs, who had departed this life. It does not appear that the district court made any order in reference to the account of Foteaux, as administrator of the elder Lepage; and no disposition is made of the appeal from the decision of the county court, upon the administration account. The record contains the accounts of Foteaux, as administrator of Lepage, as well as his accounts as guardian of the heirs. Foteaux appeals. The errors complained of, and the other material facts, are stated in the opinion of court.

*F. E. Bissell* and *J. S. Blatchley*, for the appellant, cited no authorities.

*J. S. Covel* and *B. W. Poor*, for the appellees.

I. It is a general rule of the common law, that the expenses of the infant, or ward, shall be kept within the

income or produce of his estate; and a guardian is not to be permitted to encroach upon the principal of his ward's estate, without the special previous permission of the court of probate. *Davis* v. *Harkness*, 1 Gilm., 178; *Walker* v. *Wetherell*, 6 Vesey, Jr., 474; *Clark* v. *Clark*, 8 Paige, 158; 2 Lead. Cases in Eq., 169; *William's Case*, 3 Bland., 186; *Hanson* v. *Chapman*, Ib., 138; *Long* v. *Norcorn*, 2 Ired. Eq., 354; *McDowell* v. *Caldwell*, 2 McCord, 43; *Davis* v. *Roberts*, 1 Smedes & M., 543; *Myers* v. *Wade*, 6 Randolph, 444; *Willard* v. *Chovin*, 2 Strobh. Eq.; *Anderson* v. *Thompson*, 11 Leigh, 458; *Austin* v. *Lamar*, 23 Miss., 192; *Freelock* v. *Turner*, 26 Ib., 394; *Fowler* v. *Brown*, 5 Texas, 418.

II.   Annual rests should be made in the guardian's accounts, and ten per cent. interest per annum charged. Story's Eq., sec. 1277; Stat. of 1843, 432; *Schieffelein* v. *Steward*, 1 Johns. Ch., 627; *Raphael* v. *Bohm*, 11 Vesey, Jr., 92; *Rowand* v. *Kirkpatrick*, 14 Ill., 10; *Moore's Ex.* v. *Beauchamp*, 5 Dana, 77; *Jennison* v. *Hapgood*, 10 Pick., 108; *Jones* v. *Fox*, 13 E. L. & E., 140; *Robertson et al.* v. *Archer, Adm'r*, 5 Randolph, 324; *Holmes* v. *Logan*, 3 Strobh. Eq., 31.

STOCKTON. J.—We think the parties have erred in supposing that all these accounts could be considered as  a whole, and that they could be taken to the district court, or brought to this court, by one and the same  proceeding, in the nature of an appeal.   These are all separate and distinct accounts.   The accounts of Foteaux, as administrator, is distinct from his accounts as guardian of the heirs. So, his account as guardian of each one of the heirs, is distinct from that of all the others.   The county court is required to consider each one separately, and to render a distinct adjudication upon each account.   It is from each separate decision, that an appeal must be taken, and not one appeal from the whole.   The parties, nor the court, cannot, by denominating the administrator and guardian,

Foteaux v. Lepage et al.

the plaintiff, and the heirs of Lepage, the defendants, unite the accounts into one proceeding, in such a sense as that one appeal brings up for consideration all the accounts; or that one judgment may be rendered, disposing of the whole, and of the various questions arising in them. As the decision of the court must be a distinct decision upon each account, so there must be a separate appeal from each decision. Each one of the heirs is entitled to have his portion of his ancestor's estate kept to itself, and to require his guardian to render a distinct account in relation to it. If a judgment is to be rendered against the guardian, it should be for such sum, to be ascertained by the court, as each heir may be entitled to, and not a judgment for the whole amount in his hands, due to all the heirs. The action of the district court, in adding together the amounts found to be in the hands of Foteaux, as guardian, and due to the several heirs; and in rendering judgment against him for the whole sum, was therefore erroneous. It was not competent to unite the heirs, as plaintiffs, in any such judgment, and no judgment could properly be rendered in their favor as "The Heirs of C. Lepage."

Nor are we satisfied that this was, in any sense, such a proceeding as that either the county court, or the district court, was authorized to render a judgment against Foteaux, either as guardian or as administrator. It was commenced by the heirs, to require the administrator and guardian to make a settlement of his accounts with the county court, and to ascertain the situation of the estate of which he is administrator, and the amounts in his hands belonging to each of the heirs. It was, in no sense, a proceeding against Foteaux, to recover a judgment against him for the money received by him, or remaining in his hands. It was to compel him to state his accounts, and report to the county court his doings as administrator and guardian. Neither the county court, nor the district court, was authorized to render any judgment against him. The jurisdiction of neither court was invoked for any such purposes.

All that it was empowered to do, was to ascertain the state of Foteaux's accounts, as administrator and guardian, in order that when so ascertained, the parties interested may take such further steps as they may deem expedient. Such of the heirs as were of age, were entitled to demand, and receive, their estate from their guardian. On his failure to pay, they had their remedy against him by suit upon his bond, to enforce payment. Some of the heirs were not of age, and Foteaux had not been removed from his position as guardian of those under age. We do not see that, under these circumstances, there was any propriety in rendering a judgment against him for the money ascertained to be in his hands. When a new guardian is appointed, the court may order the effects of the minor to be delivered to such new guardian. Code, sec. 1511.

Connected with this blending of the different accounts, and illustrating the absolute necessity of keeping them separate and distinct, we notice that Foteaux has included in his account as administrator, moneys received by him for the rent of the real estate of Lepage, after his death, and with which he should properly be charged as guardian of the heirs. Foteaux had no right, as administrator, to receive the rents accruing after the death of Lepage. So, the several sums paid by him for necessary repairs, improvements and taxes, upon the property, should be charged to the heirs, and included in his account as guardian. *Foltz* v. *Prouse*, 17 Ill., 487.

Other questions are raised by the exceptions taken to the report of the commissioner, which it may be proper for us to determine before finally disposing of the cause. The exception taken to the report by Foteaux, that he had been improperly charged by the commissioner, in his account as administrator, with the sum of $75,50, for rent of house in the years 1852 and 1853, has been abandoned by the appellant in the argument. It is shown by the account rendered by the administrator himself, that these rents were received by him. The misapprehension grew out of the fact that the commissioner had included, in one

Foteaux v. Lepage et al.

item, matters which, in appellant's statement, were set down as several different items.

It is next urged by Foteaux, that certain credits claimed by him in his account as administrator, were not allowed by the commissioner. As the several amounts claimed to have been paid by him, and for which he claimed credit, were for improvements to the real property of the heirs, and for the taxes thereon, it would have been a sufficient reason for rejecting them from the account of the administrator, that they were properly chargable to the heirs, in his account with them as guardian. They were rejected by the commissioner, except the sum of $55, on the taxes, out of the amount of $115, claimed to have been paid. The commissioner should, perhaps, have allowed the further sum of $5,00, shown to have been paid for erecting a chimney. The other items were properly rejected by him, for the reason that no vouchers were produced for the payments claimed to have been made, and no sufficient evidence offered to show the payments. The account of the administrator was not even rendered under oath. The amount found by the commissioner to the credit of the administrator, will be increased by the amount paid for the chimney, to the sum of $15,68.

It is objected by Foteaux, that the commissioner rejected certain charges made by him for the tuition, boarding, and clothing of his wards. It is impossible for us to reverse the decision of the district court upon the report of the commissioner, only so far as the evidence may, in our opinion, tend to show that his decision was erroneous, and that the district court erred in overruling the objections taken to it. In respect to the account of Clement Lepage, one of the heirs, the commissioner reports that he had rejected the charge made by the guardian against him for board, &c., for the reason that said Clement was sixteen years of age at the time of the commencement of the account; that he was in the employment of his guardian, rendering him service, and was at least capable of earning his board and clothing ; and that if the guardian preferred·

to keep him in his employ, the compensation to which he was entitled, should set off the charge made for boarding and clothing. To these considerations urged by the commissioner, for rejecting the charges, it may be added, that the account of the guardian is not rendered on oath; that no vouchers are produced for any payment made by him; and that none of the items are admitted, with the exception of a small amount paid for tuition, which was allowed by the commissioner.

The objections taken to the report of the commissioner, so far as they relate to the account of the guardian with Clement Lepage, apply equally to the account with each of the other heirs. At the time of the appointment of Foteaux, as guardian, some of the wards were of an age to earn their livelihood: and as to them, the commissioner held that the guardian was not entitled to anything for their board and clothing. We are not satisfied that his decision is wrong, in this respect; and we think the court did not err in confirming his report, so far as to disallow the charges made by the guardian against the the heirs, for board and clothing.

Each one of the heirs was entitled to an equal portion of his father's estate. This consisted of certain real property in Dubuque and Galena. The property in Dubuque was under rent, and the guardian is properly charged with the amount to which each one of the heirs was entitled, of the rents received. The property in Galena was sold upon an order of the court; and the guardian, during the years 1842, 1843 and 1844, received the proceeds of the sale. This money it was his duty to put to interest upon mortgage security, to be approved by the court of probate. The letting to interest is to be always for one year; and at the end of each year, the interest is to be added to, and made part of, the principal. See Act of 1839, 432, sec. 9. In addition to this, it is unquestionably the duty of the guardian, when there are more wards than one, to keep an account with each one, and to keep the estate of each ward to itself.

The guardian has the power, under the direction of the court of probate, to superintend the education and nurture of the ward ; and for that purpose, he may pay out such portion of the ward's money, as the probate court shall, from time to time, order and direct. The rents and profits of the real estate, and next the interest of the ward's money, are to be first resorted to for his nurture and education.    Section 10, Act 1839.    The guardian will not be permitted, without an order of the probate court to that effect, to encroach upon the principal sum of the ward's estate.    The act of 1839 seemed to contemplate that, by direction of the court, such principal may be encroached upon.    Certainly, without the order of the court, the guardian will not be allowed to keep the ward in idleness and ignorance, and spend the whole of his little patrimony in payment for his board and clothing.    The policy of allowing any portion of the principal to be expended in payment for mere board and clothing, is, in our opinion, more than questionable.    For the completion of the education of the ward, or for his future advancement, by enabling him to enter upon a trade or profession, by which his livelihood may be earned, it has in some cases been permitted. But, as a general rule, the expenses of the ward must be kept within the income of his estate.    If this is not sufficient for his nurture and education, the ward must either be bound out as an apprentice, to learn a trade, or application must be made to the court of probate for permission to encroach upon the principal of his estate.

At the time of the appointment of Foteaux, as guardian, Clement Lepage was sixteen years of age, and Louis Lepage was fourteen.    There is nothing to show that these boys were not, at this time, of sufficient ability to earn their support.    They are charged, however, by their guardian, with their board, at the rate of sixty dollars per annum, for two years after this time, and are not allowed anything for their labor or services by him.    It is not stated what amount per annum was received by the guardian for the rent of the property of the wards in Du-

buque, nor what the yearly rent of the same was worth. A portion of it was, perhaps, occupied by the family of Foteaux, with the rent of which he is not charged. According to the account rendered by the guardian, he has not only expended upon the nurture and education of Clement and Louis, the rents of the real estate, and the interest of their money, but he has expended of the principal of Clement's estate, the sum of $135; and of Louis, $118. And so, of the other children; until there is left of William's estate, only $9,85; and he brings Mary, the youngest, in debt $29,53. During the time of his acting as guardian—from 1842 to 1853—the amount reported by him as having been expended in the education of the wards, is the sum of $21,24. The remainder of their property seems to have been invested by the guardian in his own business, and squandered for his own gratification.

The district court did not err in confirming the report of the referee, in his statement of the account of Foteaux with the three eldest children of Lepage. In respect to the remaining three, the amount due to each, as ascertained by the commissioner, falls below the principal sum admitted to have been received by Foteaux. The amount to which each one was entitled, from the proceeds of the real estate, was the sum of $284,67. By the report of the commissioner, this sum has been reduced, by the credits allowed the guardian, until there remains of the estate of Joseph, the sum of $242,63; of the estate of William, $147,23, and of the estate of Mary, $98,93. The guardian has not shown that he was authorized by any order of the probate court, to encroach upon the principal sum in the case of either of these heirs; nor has he shown that the expenditures for which he claims credit were of a nature to justify such an encroachment. No reason is shown why, during the period of ten years, no settlement of his accounts has been made; nor why application has not been made to the court of probate for permission to expend upon the support of the wards more than the interest of their money, and the rents of their real estate.

Under these circumstances, we think the district court would have been justified in holding the guardian to even a stricter accountability than seems to have been done.

It was certainly right to compound the interest at the end of each year.   Under some circumstances, rests of a shorter period than twelve months have been sanctioned. Where a person holding the estate of minors in a fiduciary capacity, shows himself fraudulently reckless or careless of the fund committed to his charge, courts have ordered the interest to be calculated with half-yearly rests. *Raphael* v. *Bochur*, 11 Vesey, Jr., 92.   As to the rate of interest, we think that six per centum is all that should be allowed.   Where it is shown that the guardian has made more, he will be charged with all that he has made out of the ward's estate.   Where nothing is shown, he will be charged with the highest rate fixed by law.   Interest at the rate of ten per centum can, however, only be charged by agreement of parties.

As the cause must be reversed, and be remanded to the district court for further proceedings, upon the exceptions taken to the report of the commissioner, we notice another exception taken to the report by Foteaux.   He objects that he is charged with compound interest on the amount received by him, and that whilst he is allowed a commission on the principal amount, by way of compensation for his services, the commissioner refused to allow him a commission on the interest charged to him.   It does not follow, necessarily, that the guardian is entitled to a commission on all the money received by him, or on all the money charged to him.   The statute provides that the guardian shall receive such compensation as the court may, from time to time, allow.   Code, sec. 1515.   This compensation is often allowed in the shape of a per centage on the amount of money received or charged to the guardian. The court may, however, well allow him a sum in gross, proportioned to the labor, risk and trouble, devolving upon him, in the care of the person and estate of his ward. Where he shows, however, a degree of carelessness and neg-

ligence in the discharge of his duty, and in the custody of the
estate of the ward, the court will be justified in withholding
any compensation. Where, as in the present case, the
guardian delays for ten years to make a settlement; and
where, instead of putting out the money of his ward at
interest, as required by law, he uses the same himself, and
objects to being charged for the use of it at a greater rate
of interest than six per centum per annum, when the evi-
dence shows that it might have been loaned by him at ten
per centum, and that it was even worth more, the court
would have been justified in refusing to allow him any
compensation.

Our attention has also been called to mistakes in the
calculation of interest, by the commissioner, upon the
amounts found to be in the hands of the guardian. The
district court will correct the calculation of interest in the
account with Clement Lepage, one of the heirs. There is
an error, also, in the calculation of interest upon the total
amount found in the hands of the guardian, from Septem-
ber 20, 1855—the date of filing the report by the commis-
sioner. This error is unimportant, however, in view of the
fact, that there is no judgment to be rendered by the dis.
trict court for the gross amount in the guardian's hands,
due to the heirs: the court will ascertain the amount in
the hands of the guardian, due to each heir, at the time of
entering up the final decree. When the amount is so as-
certained, the proper steps may be taken by each, to
enforce the payment of the same by the guardian.

The amount of indebtedness from the guardian to the
heirs, should, in no case, be allowed to fall below the prin-
cipal sum coming to his hands; and no credits claimed,
or payments made by him, should be allowed him in his
account, which encroach upon the principal of the ward's
estate, unless such encroachment is shown to have been
first directed by the court of probate. The account of the
guardian must be required to be made under oath. He
must produce vouchers for all expenditures made by him,
and where this cannot be done, proof of the payment or

expenditure, must be given, by his own oath, or by other sufficient testimony. *Davis* v. *Harkness,* 1 Gilman, '178; *Clark* v. *Clark,* 8 Paige, 158; *Walker* v. *Wetherell,* 6 Vesey, 474; *Prince* v. *Logan,* 1 Spear's Eq., 209; *Teague* v. *Dendy,* 2 McCord, 207; *Hanson* v. *Chapman,* 2 Bland., 186; *Long* v. *Norcorn,* 2 Ired. Eq., 354; *Myers* v. *Wade,* 6 Randolph, 444; *Villard* v. *Chovin,* 2 Strobh. Eq.; *Anderson* v. *Thompson,* 11 Leigh, 458; *Austin* v. *Lamar,* 23 Miss., 192.

For the reasons given above, the judgment of the district court will be reversed, and the cause remanded for further proceedings, in conformity with this opinion.